**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICEGROWERS LIMITED, | |
| Plaintiff, | Civil Action No. 24-cv-7899 |
| v. | Judge |
| AROMA IMPORTS, INC.; SOURIANA IMPORTS, INC.; and HMAY, INC., | Magistrate Judge |
| Defendants. | JURY DEMANDED |

## COMPLAINT FOR WILLFUL TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION CAUSES OF ACTION

Plaintiff Ricegrowers Limited ("Ricegrowers" or "Plaintiff") files this Complaint and brings this action against defendants Aroma Imports, Inc., Souriana Imports, Inc., and HMAY, Inc. (collectively, "Defendants"), and alleges as follows:

### NATURE OF ACTION

1.     This action is for willful trademark counterfeiting, trademark infringement, and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; and unfair competition in violation of Illinois common law.

2.     This action results from Defendants' unauthorized importation, marketing, distribution, and/or sale of identical counterfeit rice bearing Ricegrowers' identical registered SUNWHITE® trademarks within this District. Defendants' willful counterfeiting and infringement

of Ricegrowers' distinctive and registered SUNWHITE® marks causes harm to Ricegrowers and individuals in the State of Illinois and this District. These actions are without defense.

## THE PARTIES

1.      Plaintiff Ricegrowers Limited is an Australian entity doing business as SunRice Group with its principal place of business at Yanco Avenue, Leeton, New South Wales, Australia 2705 ("Ricegrowers" or "Plaintiff").

2.      Defendant Aroma Imports, Inc. is a Michigan corporation with a principal place of business at 27209 W Warren St, Dearborn Heights, Michigan 48127, and acts as a food distributor for the sale of Middle Eastern and Mediterranean food products to retail grocery stores, including stores in this District ("Aroma"). Aroma operates the website at https://www.aromaimportsinc.com/.

3.      Defendant Souriana Imports, Inc. is an Illinois corporation with a principal place of business at 13301 SW Hwy # H, Orland Park, IL 60462, and operates a retail grocery or distribution store at that location ("Souriana"). Souriana operates the website at https://www.sourianaimports.com/.

4.      Defendant HMAY, Inc. is an Illinois corporation with its principal place of business at 612 East Roosevelt Road, Lombard, IL 60148, and operates a retail grocery store at that location under the name Mediterranean Market ("HMAY"). HMAY operates the website at https://www.youronestophalalshop.com/.

5.      Defendant Aroma targets its business activities toward consumers in Illinois, including within this District, through the distribution and sale of rice to retail stores in this region, such that Defendant Aroma has purposefully availed itself of the benefits of doing business in Illinois and can reasonably anticipate being hauled into court in Illinois. Specifically, Defendant

Aroma is distributing, offering for sale, and/or selling, without authorization, counterfeit rice bearing Ricegrowers' registered SUNWHITE® trademarks to retailers within this District.

6.     Defendants Souriana and HMAY are residents of this District and target their business activities toward consumers in Illinois, including within this District, through the operation of retail grocery stores in this District. Specifically, Defendants Souriana and HMAY are each advertising, marketing, distributing, offering for sale, and/or selling, without authorization, counterfeit rice bearing Ricegrowers' registered SUNWHITE® trademarks to consumers within this District.

7.     As a result, all of the Defendants transact business in this District and have sufficient minimum contacts with the State of Illinois.

8.     By selecting and using marks that are identical to Ricegrowers' registered SUNWHITE® trademarks, Defendants' conduct is done with the knowledge and intent that such counterfeit rice will be mistaken for the genuine, high-quality rice offered by Ricegrowers. In undertaking these deliberate acts, including all facts and allegations set forth below, which are incorporated herein by reference, Defendants have caused substantial harm to Ricegrowers in the State of Illinois knowing that such harm would be felt here. Ricegrowers has no ability to control the nature and quality of Defendants' counterfeit rice under its trademarks. As a result, Defendants had fair warning they may be called before an Illinois court in this District.

### JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over Ricegrowers' federal claims pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). This Court also has subject matter jurisdiction over Ricegrowers' federal claims pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between Ricegrowers and Defendants and the amount in

controversy, exclusive of interest and costs, exceeds $75,000. This Court has supplemental jurisdiction over Ricegrowers' state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

10.    This Court has personal jurisdiction over Defendants pursuant to the Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2-209 *et seq.*, and such an assertion is in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution, because Defendants transact business in this District, including the counterfeiting and infringing conduct described herein, and have purposefully directed such business activities to consumers in this District. This Court has personal jurisdiction over Defendants Souriana and HMAY for the further reason that they are Illinois residents and corporations organized under the laws of the state of Illinois.

11.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because Ricegrowers is doing business in this District, and a substantial part of the events giving rise to the claims occurred in this District.  Moreover, because Defendants are subject to personal jurisdiction in this District, venue is proper in this District.

12.    Assignment of this action to the Eastern Division is proper because a substantial part of the events giving rise to the claims alleged herein occurred in this Division.

### RICEGROWERS' LONG AND DISTINGUISHED HISTORY

13.    Founded in 1950, Ricegrowers operates under the name SunRice Group and is one of the largest rice food companies in the world and one of Australia's leading branded food exporters. Ricegrowers operates in close to 50 markets and employs over 2,000 individuals around the globe resulting in over 1,200,000,000 billion USD in revenue in fiscal year 2024. Ricegrowers' primary U.S. operation is through its wholly-owned subsidiary SunFoods LLC ("SunFoods"),

which is Ricegrowers' rice milling, packaging, distribution, sales and marketing arm based in Woodland, California.

14.     Ricegrowers' main product lines include Australian rice, international rice, rice food (rice cakes, rice chips, and breakfast cereals), Riviana Foods (bakery, condiments and sauces, soups, canned fruits and vegetables), and CopRice (feed for animals). Examples of Ricegrowers' trademarks include SUNWHITE®, SUNRICE®, HINODE®, ISLAND SUN®, and COPRICE and TRUKAI.

15.     For many decades individuals and their families have relied upon Ricegrowers to deliver high quality rice for almost any occasion ranging from eating a simple family meal, celebrating a holiday, or enjoying a major life milestone. Ricegrowers takes its responsibilities very seriously to ensure it consistently delivers on its brand promise and provides the best rice products that it can.

16.     Through its extensive history, Ricegrowers has become a major force in rice production around the globe and utilizes local farmers to promote sustainability and engage with local communities.

17.     Ricegrowers first started producing rice under the SUNWHITE® trademark in 1955 in Australia and began exporting SUNWHITE® rice globally in the 1990s, including to the United States, Pacific Ocean region, and Middle East.

18.     Over the years, SUNWHITE® rice gained significant popularity in Middle Eastern markets and is primarily marketed to Middle Eastern or Arabic markets, stores and consumers. The SUNWHITE® brand is now one of the largest and most well-known rice brands in the Middle East and Ricegrowers has been selling SUNWHITE® rice in the Middle East, including in Arabic packaging, for over twenty-five years. Therefore, the SUNWHITE® trademark has become one of

Ricegrowers' most valuable global brands and is registered in many foreign countries in the Middle East and Europe.

19. The popularity of the SUNWHITE® brand in the Middle East (and Europe) has translated into substantial sales and popularity of SUNWHITE® rice in the U.S. as well. The SUNWHITE® brand is particularly popular among Middle Eastern and Arabic communities in the U.S. and is a market leader for Calrose rice in the retail segment. When individuals and families relocate from Middle Eastern countries to the U.S., they often search for SUNWHITE® brand rice given their familiarity with the brand in their home countries. True and correct photographs of genuine SUNWHITE® rice packaging are shown below.





20.     Ricegrowers and its predecessors have used the SUNWHITE® trademark exclusively and continuously for rice in the U.S. since at least as early as the 1990s and globally since 1955.



21.     Ricegrowers and its predecessors also have used the                    trademark ("Arabic SUNWHITE Mark") exclusively and continuously for rice in the U.S. since at least as early as April 2020 and globally since at least as early as 1988.

22.     Ricegrowers' U.S. subsidiary, SunFoods, primarily manufactures SUNWHITE® rice for the U.S. market. The SUNWHITE® rice brand has become a household name among Arabic-speaking customers looking for Middle Eastern rice in the U.S. Ricegrowers, via SunFoods, currently has an exclusive distribution agreement with Diamonds Trading USA for the U.S. (except Hawaii and Alaska) distribution of its SUNWHITE® brand rice. Genuine SUNWHITE® rice is currently being sold in Middle Eastern grocery stores in the Chicagoland area, among other locations.

### RICEGROWERS' STRONG AND DISTINCTIVE TRADEMARKS

23.     Ricegrowers' trademarks have earned substantial fame and considerable goodwill among the public and are critical to Ricegrowers' business success. Ricegrowers owns extensive common law rights in the SUNWHITE®,                    , and                    brands in connection with rice.

24.     Ricegrowers owns the following United States Trademark Registrations for the SUNWHITE® marks (collectively, "SUNWHITE Registrations"), both of which are legally and

validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | Reg. No. | Int'l Class & Goods | Status |
|------|----------|---------------------|--------|
| SUNWHITE | 3,675,633 | Cl. 30: Rice | Incontestable |
| Sunwhite | 7,356,596 | Cl. 30: Rice; short-grain rice; medium-grain rice | Registered |

*See* Exhibit A, copies of the Certificates of Registration and USPTO Trademark Status Document Retrieval ("TSDR") printouts for the SUNWHITE Registrations.

25.     In addition, Ricegrowers owns the following United States Trademark Application for the Arabic SUNWHITE Mark ("Arabic SUNWHITE Application"), which was legally and validly filed on the Principal Register of the USPTO:

| Mark | Ser. No. | Int'l Class & Goods | Status |
|------|----------|---------------------|--------|
| صنوايت | 98/712,502 | Cl. 30: Rice | Pending |

*See* Exhibit B, USPTO TSDR printout for the Arabic SUNWHITE Application.

26.     Pursuant to 15 U.S.C. § 1057(b), Ricegrowers' federal registrations are *prima facie* evidence of the validity of its registered SUNWHITE® marks as well as Ricegrowers' ownership and exclusive right to use its registered SUNWHITE® marks in connection with the goods identified in the registration certificates, namely, rice. Moreover, Ricegrowers' federal registration for SUNWHITE is incontestable under 15 U.S.C. § 1065. Pursuant to 15 U.S.C. § 1115(b), Ricegrowers' incontestable registration is *conclusive* evidence of the validity of the SUNWHITE mark, Ricegrowers' ownership of the mark, and Ricegrowers' exclusive right to use the

SUNWHITE mark in commerce in connection with rice. The marks reflected in the SUNWHITE Registrations and the Arabic SUNWHITE Application together with Ricegrowers' extensive common law rights in the SUNWHITE brands are hereinafter referred to as the "SUNWHITE Marks."

27.     Each year Ricegrowers and its authorized distributor prominently advertise, market, and promote rice under the SUNWHITE Marks in the U.S. through various media, including, but not limited to, the Internet and social media. Ricegrowers' extensive use and advertising of the SUNWHITE Marks has resulted in consumer recognition that the SUNWHITE Marks identify Ricegrowers as the source of high-quality rice. The SUNWHITE Marks are assets of incalculable value as an identifier of rice products and goodwill.

28.     Ricegrowers also has invested substantial effort and resources in research and development, manufacturing, food safety and compliance, customer service and its meticulous quality control standards to ensure that its food products exceed all standards. Ricegrowers takes great pride in its reputation in the marketplace and undertakes tremendous effort, time, and cost to maintain this reputation.

29.     Ricegrowers has operated its SUNWHITE website at www.sunwhite.me since at least 2014, and this website features recipes for customers, background information about rice, and detailed information about SUNWHITE rice. This website is global in nature targeting SUNWHITE rice customers around the world, including U.S. consumers, and U.S. users are the second largest source of traffic globally for this website. A true and correct screen printout from the website is shown below:



30.     In short, the SUNWHITE Marks are distinctive assets of immeasurable value and identifiers of genuine Ricegrowers rice products. The goodwill symbolized by the SUNWHITE Marks belongs exclusively to Ricegrowers and dates back decades, long before Defendants' adoption and use of the marks identical to the SUNWHITE Marks.

**DEFENDANTS' COUNTERFEITING AND INFRINGING CONDUCT
IN VIOLATION OF RICEGROWERS' SUNWHITE® MARKS**

31.     Despite having constructive and actual knowledge of Ricegrowers' prior rights to the SUNWHITE Marks, Defendants are each advertising, marketing, importing, distributing, offering for sale, and/or selling rice in interstate commerce bearing and/or using Ricegrowers' identical SUNWHITE Marks in packaging nearly identical to and virtually indistinguishable from Ricegrowers' genuine SUNWHITE packaging, all without authorization or consent from Ricegrowers.

32.     Specifically, Ricegrowers identified Defendant Aroma importing rice under the identical SUNWHITE Marks into the U.S. from Calrose Rice Ltd. and Global Rice Ltd. in

Bulgaria, and the subsequent sale of that counterfeit rice by Defendants Souriana and HMAY to consumers in this District at their retail grocery stores in the Chicagoland area. The packaging for the counterfeit SUNWHITE rice sold by Defendants bears the following stamp: "PACKED FOR: Aroma Imports INC."

33.     A side-by-side comparison of Ricegrowers' genuine rice and Defendants' counterfeit rice is shown below.



| Genuine SUNWHITE® Rice | Counterfeit SUNWHITE Rice |
|---|---|
| | (from Defendant HMAY) |
| | (from Defendant Souriana) |

| Genuine SUNWHITE® Rice | Counterfeit SUNWHITE Rice |
|---|---|
|  | |



(from Defendant HMAY)

(from Defendant Souriana)

34.     Even a careful review of the genuine and counterfeit SUNWHITE packaging shows that they are virtually identical because each packaging features all of the same core components, namely, (1) prominent use of the identical trademarks ( , SUNWHITE, and

Sunwhite ); (2) use of the identical photographs of rice, meat and vegetables; (3) identical use of sun-like design in blue on the packaging ( ); (4) nearly identical text on the back of the packaging; and (5) use of the same color combination and arrangement of key packaging elements.

37.     Ricegrowers confirmed that the SUNWHITE rice product purchased at each of Defendant Souriana's and Defendant HMAY's retail grocery stores was not manufactured or authorized by Ricegrowers and is counterfeit.

**DEFENDANTS' KNOWLEDGE OF RICEGROWERS' RIGHTS TO THE SUNWHITE® MARKS**

38.     Defendants' conduct is part of a deliberate campaign to copy all key elements of Ricegrowers' genuine SUNWHITE packaging and there can be no excuse for this conduct.

39.     Ricegrowers believes that the counterfeit SUNWHITE rice packaging was intentionally designed to mislead customers as the dominant elements are not merely similar, but virtually indistinguishable from genuine packaging. Therefore, it is clear that Defendants were seeking to build upon the strong reputation for Ricegrowers' SUNWHITE rice in the U.S. marketplace and around the world.

40.     Defendant Aroma has actual knowledge of Ricegrowers' prior rights because Ricegrowers sent a cease and desist letter to Aroma earlier this year that went unanswered – despite multiple follow-ups from Ricegrowers.

41.     Defendants are copying Ricegrowers' identical SUNWHITE Marks for use in connection with the same goods for which Ricegrowers uses and owns registrations for its SUNWHITE Marks, namely rice, and are using virtually indistinguishable product packaging, all in an effort to appear legitimate and deceive unsuspecting consumers into purchasing non-genuine SUNWHITE rice.

42.     Defendants had constructive notice of Ricegrowers' ownership of the federally registered rights to the SUNWHITE mark under 15 U.S.C. §1072, at least as early as September 1, 2009.

43.     Ricegrowers never authorized, licensed or otherwise permitted Defendants to use or reproduce the SUNWHITE Marks or any confusingly similar variation thereof.

44.     Simply put, there is no legitimate reason or need for Defendants to use the SUNWHITE Marks in this fashion.  The only purpose in using the SUNWHITE Marks is to lure customers into believing they are purchasing genuine and authentic Ricegrowers rice products, when they are not. Such conduct not only infringes upon Ricegrowers' registered SUNWHITE® trademarks, but also implicates food safety concerns, including in the State of Illinois.

### DEFENDANTS' INTENTIONAL ACTIONS HAVE CAUSED EXTENSIVE HARM AND DAMAGE TO RICEGROWERS

45.     Defendants' willful actions are intentional and intended to trade on the reputation and goodwill of Ricegrowers and the SUNWHITE Marks. Defendants had actual knowledge and constructive notice of Ricegrowers' ownership of the SUNWHITE Marks. Despite this, Defendants proceeded to willfully infringe upon Ricegrowers' rights.

46.     By selecting and using marks that are identical to the SUNWHITE Marks in connection with the counterfeit rice, Defendants have caused substantial harm to Ricegrowers in the State of Illinois knowing that such harm would be felt here.

47.     Defendants' use of the SUNWHITE Marks is likely to mislead, deceive, and confuse the purchasing public and the trade. It is likely that consumers will mistakenly believe that Defendants are connected, associated or in some way affiliated with Ricegrowers, when in fact no such connection, association or affiliation exists, and/or that the counterfeit rice is genuine Ricegrowers' rice, when it is not. Not only does such conduct create a likelihood of confusion, but consumers have also been actually confused as to the source of Defendants' counterfeit rice and mistakenly believed such products originated from Ricegrowers. As a result, Defendants' activities are causing actual confusion in the marketplace and actual harm to Ricegrowers.

48.     Defendants had no legitimate reason or good faith basis to use the SUNWHITE Marks in connection with the counterfeit rice.

49.     Defendants' bad faith conduct causes damage and irreparable injury to Ricegrowers, and to its goodwill and business reputation. As a direct and proximate result of Defendants' counterfeiting and infringement of the SUNWHITE Marks, Ricegrowers has suffered, and will continue to suffer, irreparable harm, damages and economic injury. Defendants' acts are aggravated by the fact that the use of the counterfeit rice by consumers may also implicate food safety concerns, including the safety of consumers in Illinois who consume Defendants' counterfeit rice.

50.     Ricegrowers has no adequate remedy at law, and unless Defendants are restrained and enjoined by the Court, these acts will continue to cause damage and irreparable injury to Ricegrowers, and damage its goodwill and business reputation. Ricegrowers cannot ascertain the precise amount of its damages at this time. Ricegrowers has no ability to control the nature and quality of the counterfeit rice provided under the SUNWHITE Marks. Effectively, Ricegrowers' stellar reputation and goodwill is placed in the hands of questionable third parties.

<u>COUNT I</u>

**FEDERAL TRADEMARK INFRINGEMENT**
**(REGISTERED MARKS)**
**15 U.S.C. § 1114(1)**

51.     As the first ground for relief, Ricegrowers alleges violations of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Ricegrowers repeats and realleges the allegations of paragraphs 1 through 50, as though fully set forth herein.

52.     Ricegrowers owns exclusive rights in and to the trademarks SUNWHITE and



and the SUNWHITE Registrations for these marks. As alleged herein, Defendants

either had actual knowledge or constructive notice of Ricegrowers' rights in the SUNWHITE Registrations.

53. Without Ricegrowers' authorization or consent, Defendants publicly advertise, sell, offer for sale, and/or distribute counterfeit rice bearing Ricegrowers' SUNWHITE® trademarks in interstate commerce in direct competition with genuine SUNWHITE rice.

54. Defendants' unauthorized and infringing use of the marks reflected in Ricegrowers' SUNWHITE Registrations, as alleged herein, is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendants' goods by Ricegrowers. The consuming public and the trade are likely to believe that Defendants' goods originate with Ricegrowers, are licensed, sponsored or approved by Ricegrowers, or in some way connected with or related to Ricegrowers, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55. Defendants' unauthorized and infringing use of the marks reflected in Ricegrowers' SUNWHITE Registrations, as alleged herein, constitutes intentional and willful infringement of Ricegrowers' rights in and to its federally registered trademarks, as pled herein, in violation Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

56. These infringing acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

## COUNT II

**FEDERAL TRADEMARK COUNTERFEITING**
**(REGISTERED MARKS)**
**15 U.S.C. § 1114**

57.     As the second ground for relief, Ricegrowers alleges violations of 15 U.S.C. § 1114. Ricegrowers repeats and realleges the allegations of paragraphs 1 through 56, as though fully set forth herein.

58.     As stated above, Ricegrowers owns exclusive rights in the trademarks reflected in the SUNWHITE Registrations in connection with rice, and Defendants either had actual knowledge or constructive notice of Ricegrowers' rights in the SUNWHITE Registrations.

59.     Without Ricegrowers' authorization or consent, and in direct competition with Ricegrowers' genuine rice in interstate commerce, Defendants are using the identical marks in the SUNWHITE Registrations on and in connection with identical goods, namely, rice, that are covered by the SUNWHITE Registrations.

60.     In particular, Defendants each advertise, sell, offer for sale, and/or distribute counterfeit rice under the identical SUNWHITE and  marks, which are the same products covered by the SUNWHITE Registrations for these marks.

61.     Defendants' use of marks identical to or substantially indistinguishable from the marks reflected in the SUNWHITE Registrations in connection with the same goods covered by the registrations is likely to cause and is causing confusion, mistake and deception among consumers as to the origin of the counterfeit rice, and is likely to deceive the public into believing the counterfeit rice being offered and advertised by Defendants originate from, are associated with, or are otherwise authorized by Ricegrowers, all to the damage and detriment of Ricegrowers' reputation and goodwill.

17

62.     Defendants knew or had reason to know of the SUNWHITE trademarks reflected in the SUNWHITE Registrations and Ricegrowers' rights to the exclusive use of the same, and their actions were conducted with complete disregard of Ricegrowers' rights. Accordingly, Defendants' actions constitute willful counterfeiting of the SUNWHITE trademarks reflected in the SUNWHITE Registrations in violation of the Lanham Act, in violation of 15 U.S.C. § 1114.

63.     Defendants' acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

### COUNT III

### FEDERAL UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

64.     As the third ground for relief, Ricegrowers alleges violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Ricegrowers repeats and realleges the allegations of paragraphs 1 through 63, as though fully set forth herein.

65.     Defendants' unauthorized use of the SUNWHITE Marks as alleged herein, constitutes use of a false designation of origin and false or misleading representation in interstate commerce, which wrongly and falsely designates, describes and represents the origin of Defendants' goods as originating from or being connected with Ricegrowers, and is likely to cause confusion, or to cause mistake, or to deceive as to Defendants' affiliation, connection or association with Ricegrowers, or as to the origin, sponsorship or approval of Defendants' goods by Ricegrowers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.     These acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

## COUNT IV

### ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 Ill. Comp. Stat. 510/1 *et seq.*

67.     As the fourth ground for relief, Ricegrowers alleges violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*  Ricegrowers repeats and realleges the allegations of paragraphs 1 through 66, as though fully set forth herein.

68.     Defendants' unauthorized use of the SUNWHITE Marks as alleged herein, has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendants' and Ricegrowers' businesses, inasmuch as it gives rise to the incorrect belief that Defendants' businesses have some connection with Ricegrowers. These acts constitute deceptive trade practices in the course of Defendants' businesses in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*

69.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

## COUNT V

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES
### 815 Ill. Comp. Stat. 505/1 *et seq.*

70.     As the fifth ground for relief, Ricegrowers alleges violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* Ricegrowers repeats and realleges the allegations of paragraphs 1 through 69, as though fully set forth herein.

19

71.     Defendants' unauthorized use of the SUNWHITE Marks, as alleged herein, has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Defendants' goods. These acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*

72.     These acts have caused, and will continue to cause unless restrained by this Court, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

### COUNT VII

### ILLINOIS COMMON LAW UNFAIR COMPETITION

73.     As the sixth ground for relief, Ricegrowers hereby alleges unfair competition under Illinois common law.  Ricegrowers repeats and realleges the allegations of paragraphs 1 through 72, as though fully set forth herein.

74.     As a result of their actions complained of herein, Defendants have misappropriated valuable property rights of Ricegrowers, have passed off their rice products as those of Ricegrowers, are trading off the goodwill symbolized by the SUNWHITE Marks, and are likely to cause confusion or mistake, or to deceive members of the consuming public and the trade.  These acts constitute unfair competition in violation of the common law of the State of Illinois.

75.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Ricegrowers, for which Ricegrowers has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Ricegrowers prays that this Court enter a judgment and order:

1.     That Defendants willfully violated Sections 32(1) and 43(a) of the Lanham Act;

2.     That Defendants committed acts of unfair competition, deceptive business and trade practices, and consumer fraud and deceptive business practices under Illinois common and statutory law;

3.     That Defendants and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

A.     Using the SUNWHITE Marks, including but not limited to the marks SUNWHITE, , , or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the manufacture, production, sale, offering for sale, distribution, importation, or advertising of any goods that are not genuine Ricegrowers goods or not authorized by Ricegrowers;

B.     Importing any rice products under the SUNWHITE Marks;

C.     Using any name, mark, or domain name that wholly incorporates the SUNWHITE Marks or is confusingly similar thereto, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the SUNWHITE Marks;

D.     Registering, transferring, selling, owning or exercising control over any domain name or social media handle that incorporates, in whole or in part, the SUNWHITE Marks or anything confusingly similar thereto;

21

E.  Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendants are in any way affiliated, connected, or associated with Ricegrowers or its goods and services;

F.  Licensing or authorizing others to use the SUNWHITE Marks or any confusingly similar mark;

G.  Injuring Ricegrowers' business reputation and the goodwill associated with the SUNWHITE Marks, and from otherwise unfairly competing with Ricegrowers in any manner whatsoever; and

H.  Passing off Defendants' goods as those of Ricegrowers.

4.  That, pursuant to the Court's inherent authority, the U.S. Customs and Border Protection service is directed to stop all shipments, imports and deliveries to Aroma Imports, Inc. and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them that contain SUNWHITE rice or any rice products under the SUNWHITE Marks;

5.  That, pursuant to 15 U.S.C. §1118, Defendants be required to deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendants that bear the SUNWHITE Marks or any other mark that is likely to be confused with the SUNWHITE Marks;

6.  That, because of Defendants' willful actions and pursuant to 15 U.S.C. § 1117 and 815 Ill. Comp. Stat. §505/10a *et seq.*, Ricegrowers be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

A.  All profits received by Defendants from sales and revenues of any kind made as a result of their actions, and all damages sustained by Ricegrowers

as a result of Defendants' actions, and that such profits and damages be trebled;

B. Or, if Ricegrowers so elects, an award for statutory damages pursuant to 15 U.S.C. § 1117(c)(2) consisting of $2,000,000 per counterfeit mark, per type of goods sold, offered for sale or distributed; and

C. The costs of the action.

7. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve on Ricegrowers within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

8. That Defendant Aroma Imports shall notify in writing Calrose Rice Ltd, Global Rice Ltd, of the terms of any preliminary and/or permanent injunction issued by the Court;

9. That because of the exceptional nature of this case resulting from Defendants' deliberate and willful trademark counterfeiting and infringing actions, this Court award to Ricegrowers all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. §§ 1117(a) and (b), 815 Ill. Comp. Stat. §510/3, and 815 Ill. Comp. Stat. §505/10a; and

10. That Ricegrowers shall have such other and further relief as this Court may deem just.

**JURY DEMAND**

Ricegrowers demands a trial by jury on all issues so triable under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

RICEGROWERS LIMITED


Dated:  August 30, 2024          By: /s/ Christian S. Morgan
                                     Joseph T. Kucala, Jr. (Reg. No. 6275312)
                                     Jay M. Burgett (Reg. No. 6285841)
                                     Christian S. Morgan (Reg. No. 6327350)
                                     KUCALA BURGETT LAW LLC
                                     P.O. Box 547
                                     New Lenox, IL 60451
                                     Tel: 308-258-0545
                                     courts@kbl.law

                                     *Attorneys for Plaintiff Ricegrowers Limited*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICEGROWERS LIMITED, | |
| Plaintiff, | Civil Action No. 24-cv-7899 |
| v. | Judge |
| AROMA IMPORTS, INC.; SOURIANA IMPORTS, INC.; and HMAY, INC., | Magistrate Judge |
| Defendants. | |

**LIST OF EXHIBITS SUPPORTING PLAINTIFF'S COMPLAINT**
**AGAINST DEFENDANTS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Copies of the Certificates of Registration and USPTO Trademark Status Document Retrieval ("TSDR") printouts for the SUNWHITE Registrations |
| B | USPTO TSDR printout for the Arabic SUNWHITE Application |